IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENTON NIXON**, | ) | Civil No.   17-563 |
| | ) | Criminal No. 14-132-12 |
| Movant, | ) | |
| v. | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.      INTROUCTION

Pending before the court is the *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by defendant Benton Nixon ("Nixon") on May 2, 2017. (ECF No. 638.)[1] At the government's request, the court issued notice to Nixon pursuant to United States v. Miller, 197 F.3d 644, 646 (3d Cir. 1999). (ECF No. 681.) In the notice, the court directed Nixon to advise the court as to his choice from the following three options: (1) have his motion ruled upon as filed; (2) if his motion is not styled as a § 2255 motion, have his motion recharacterized as a § 2255 motion and heard as such, but lose his ability to file a second or subsequent petition absent certification by the court of appeals; or (3) withdraw his motion, and file one all-inclusive § 2255 petition within the one year statutory period. (Id.) Nixon elected to stand on his original motion as filed. (ECF No. 696.) On April 19, 2018, the court granted the government's request for a stay of the disposition of Nixon's motion pending the outcome of United States v. Glass, 904 F.3d 319 (3d Cir. 2018), and directed the government to notify the court as soon as practicable after Glass

---

[1] A *pro se* motion must be held to "less stringent standards than formal pleadings drafted by lawyers." Fantone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015).

was decided. (ECF No. 724.) In March 2020, it came to the court's attention that <u>Glass</u> had been resolved and the court lifted the stay on March 13, 2020. (ECF No. 809.) The government filed its response in opposition on May 7, 2020. (ECF No. 832.) Nixon's motion is now ripe for decision.

In his § 2255 motion, Nixon claims that (1) he was improperly designated as a career offender under U.S.S.G. § 4B1.1 and (2) his counsel was ineffective for failing to file a motion to stay sentencing pending the Supreme Court's decision in <u>United States v. Mathis</u>, 136 S. Ct. 2243 (2016), and for failing to file a notice of appeal. (ECF Nos. 638, 639.) Nixon requests that the court vacate his sentence and impose a new sentence based on a guideline calculation that does not include the career-offender enhancement. In the alternative, Nixon requests that the court permit him to file an out-of-time direct appeal.

## II.    Background

On January 6, 2016, Nixon pleaded guilty to one count of possession with intent to distribute less than 100 grams of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). (ECF No. 492.) Nixon entered into a plea agreement with the government, which the court accepted pursuant to Federal Rule of Criminal Procedure 11. As part of the agreement, Nixon waived his right to take a direct appeal from his conviction or sentence; the waiver is subject to three exceptions and expressly permits Nixon to assert a claim for ineffective assistance of counsel.[2]

The United States Probation Office prepared a Presentence Investigation Report ("PSR") in which it designated Nixon as a career offender, pursuant to U.S.S.G. § 4B1.1(a). (ECF No. 526.) The career-offender designation was based on Nixon's two prior state convictions for possession

---

[2] Nixon may take a direct appeal from his sentence if: (1) the government appeals from the sentence; (2) the sentence exceeds the applicable statutory limits; or (3) the sentence unreasonably exceeds the guideline range determined by the court.

with intent to deliver heroin, in violation of 35 Pa. Cons. Stat. § 780-113(a)(30). (Id.) The PSR construed Nixon's prior convictions as "controlled substance offense[s]," as defined in U.S.S.G. § 4B1.2(b). As a result, the sentencing guidelines recommended a term of imprisonment of 151 to 188 months and a term of supervised release of 3 years.[3] Neither the government nor defense counsel objected to the PSR or the Tentative Findings and Rulings Concerning the Applicable Advisory Guideline Range issued by the court. Defense counsel did move for a downward variance, and, after considering the factors set forth in 18 U.S.C. § 3553(a), the court sentenced Nixon to a term of imprisonment of 115 months and a term of supervised release of 3 years. (ECF No. 551.) Nixon did not file a notice of appeal.

### III.    Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the sentencing court to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The Supreme Court reads § 2255 as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

---

[3] Nixon argues that, had the career-offender enhancement not been applied, the sentencing guideline recommendation for his offense would have been a term of imprisonment of 77 to 96 months. (ECF No. 639 at 20.)

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 625 (4th ed. 2011) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

"The statute's language 'is somewhat lacking in precision' but 'afford[s] federal prisoners a remedy identical in scope to federal habeas corpus [under 28 U.S.C. § 2254].'" United States v. Folk, 954 F.3d 597, 601 (3d Cir. 2020) (quoting Davis v. United States, 417 U.S. 333, 343 (1974)). "The scope of relief does not reach 'every asserted error of law. Rather, § 2255 provides relief for jurisdictional and constitutional claims, as well as for certain nonconstitutional claims." Id. Relief for a non-constitutional claim brought under §2255, such as a flawed sentence, is available in two circumstances: (1) where a sentencing error resulted in "'an omission inconsistent with the rudimentary demands of fair procedure,'" or (2) where a sentencing error constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice[.]'" Folk, 954 F.3d at 602 (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)).

An issue that could have been raised on direct appeal, but was not, is subject to procedural default. United States v. Sokolow, Nos. 93-394, 98-764, 1999 WL 167677 at *1 (E.D. Pa., Mar. 23, 1999) (citing United States v. Frady, 456 U.S. 152, 162-67 (1982)). Procedurally defaulted claims are waived unless a habeas petitioner demonstrates either (1) cause for the procedural default and actual prejudice, or (2) that he is actually innocent. Parkin v. United States, 565 F. App'x 149, 151 (3d Cir. 2014); United States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005).

A district court is required to hold an evidentiary hearing on a § 2255 motion if "the files and records of the case are inconclusive as to whether the movant is entitled to relief." United

States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). "[T]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." Id. at 545. The facts alleged in Nixon's motion and the record of the instant case are conclusive as to whether Nixon is entitled to relief. The court, therefore, is not required to hold an evidentiary hearing to decide the motion before it.

### IV.  Motion to Vacate Due to Improper Career-Offender Enhancement

Nixon argues that his sentence should be vacated because he was improperly designated as a career offender under the sentencing guidelines. The pertinent provision of § 4B1.1 states:

> A defendant is a career offender if (1) the defendant was at least eighteen years old
> at the time the defendant committed the instant offense of conviction; (2) the instant
> offense of conviction is a felony that is either a crime of violence or a controlled
> substance offense; and (3) the defendant has at least two prior felony convictions
> of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Nixon does not contest that he was at least 18 years old at the time of sentencing, or that the conviction for which he was sentenced was a controlled substance offense. Nixon argues that his prior state convictions were not controlled substance offenses as defined by the sentencing guidelines.[4] Nixon relies on the Supreme Court's decision in Mathis, which applied the "modified categorical approach" to compare the elements of the Iowa burglary statute to the generic offense of burglary listed in the Armed Career Criminal Act (ACCA). Mathis, 136 S. Ct.

---

[4] "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

at 2248. The court held that the defendant's prior convictions under the Iowa burglary statute did not qualify the defendant for enhanced punishment under the ACA because the elements of the Iowa statute were broader than the elements of the generic offense of burglary. Id. at 2257. Here, Nixon makes a similar argument that the elements of the Pennsylvania statute underlying his prior convictions are broader than the elements of a "controlled substance offense" as defined by § 4B1.2(b). Nixon argues that he was improperly designated as a career offender and was sentenced to a longer term of imprisonment as a result.

Whether or not Nixon's claim might succeed on its merit, it is procedurally defaulted because he did not raise the issue on direct appeal. Frady, 456 U.S. at 162-67. Nixon does not argue that he is actually innocent and, therefore, must show cause and actual prejudice to cure the procedural default. Parkin, 565 F. App'x at 151. To cure the default, Nixon argues that the legal basis for his claim was not reasonably available at the time of sentencing because the Supreme Court had not issued its decision in Mathis. Had he been able to raise a Mathis-based argument at sentencing, Nixon asserts that he would not have been designated as a career offender and would have been sentenced to a shorter term of imprisonment.

"[C]ause to excuse procedural default may exist where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." United States v. Jenkins, 333 F.3d 151, (3d Cir. 2003). "[W]here the argument was not novel and 'the Federal Reporters were replete with cases involving [similar] challenges,' the default is not excused." Id. (quoting Bousley v. United States, 523 U.S. 614, 622-23 (1998)). The argument that Nixon raises in his § 2255 motion is not a novel one and was available to his counsel at the time Nixon's sentence was imposed. In fact, the Supreme Court stated in Mathis that "[f]or more than 25 years, our decisions have held that the

prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense." Mathis, 136 S. Ct. at 2247.

Nixon also failed to establish actual prejudice. Nixon relies on Mathis to argue that the elements of 35 Pa. Cons. Stat. § 780-113 § (a)(30), the statute underlying his prior convictions, are broader than a "controlled substance offense" as defined by §4B1.2(b). The Third Circuit Court of Appeals addressed this very argument in United States v. Glass, 904 F.3d 319, 321 (explaining that "[a] state conviction cannot qualify as a 'controlled substance offense' if its elements are broader than those listed in §4B1.2(b) (citing Mathis, 136 S. Ct. at 2251)). In Glass, the defendant argued that 35 Pa. Cons. Stat. § 780-113 § (a)(30) criminalizes "a mere offer to sell drugs," and is therefore broader than a "controlled substance offense" under the sentencing guidelines. Id. The court of appeals concluded, however, that section 780-113(a)(30) does not criminalize an offer to sell and therefore "is not broader than the Guidelines' definition of a 'controlled substance offense'" Id. at 323. Nixon's prior convictions do constitute controlled substances under § 4B1.2(b) and he was properly designated as a career offender under the sentencing guidelines. Because Nixon did not show cause or actual prejudice, his claim is procedurally barred.

Even if Nixon's claim was not procedurally barred, the court could not decide it on the merits because it is not within the scope of § 2255. The Third Circuit Court of Appeals recently held that "an incorrect career-offender enhancement under the advisory guidelines is not cognizable under § 2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice." United States v. Folk, 954 F.3d 597, 604 (3d Cir. 2020). There, the sentencing court determined that the defendant's prior convictions were "crimes of violence as defined by U.S.S.G. § 4B1.2(a) and designated the defendant as a career offender. Id. The defendant challenged his career-offender designation in a § 2255 motion, arguing that a Supreme

Court decision announced after his sentencing rendered § 4B1.2(a) void. Id. The court of appeals gave four rationales for holding that the defendant's claim was not cognizable under § 2255: (1) "[e]ven when based on an incorrect advisory career-offender enhancement, a sentence within the statutory maximum is lawful" (Id. at 60); (2) "an incorrect career-offender enhancement is not a fundamental defect inherently resulting in a complete miscarriage of justice" because the sentencing guidelines are advisory and are merely one factor that a court considers at sentencing (Folk, 954 F.3d at 605); (3) "an incorrect career-offender designation is not the type of defect that supports undermining finality[,]" given the advisory nature of the Guidelines; and (4) "[t]here is no manageable limit to the types of sentencing errors that would be cognizable under §2255 if an incorrect career-offender enhancement were found to be cognizable." Id.

Nixon does not argue that his sentence was imposed in violation of the Constitution or federal law, the court lacked jurisdiction to impose the sentence, or the sentence imposed exceeded the statutory maximum. Nixon, therefore, must show that his sentence is "otherwise subject to collateral attack," based on an incorrect application of the sentencing guidelines. 28 U.S.C. § 2255. As explained by the court of appeals, an incorrect guideline calculation does not constitute "a fundamental defect which inherently results in a complete miscarriage of justice." Folk, 954 F.3d at 604. Nixon's claim that he was improperly designated as a career-offender is not cognizable under § 2255.

## V.    Motion to Vacate Due to Ineffective Assistance of Counsel

Nixon's claims of ineffective assistance of counsel are not procedurally defaulted. Massaro v. United States, 538 U.S. 500, 504 (2003). His § 2255 motion is the proper forum to raise those claims. Nixon contends that his trial counsel was ineffective in the following respects: (1) he failed

to file a motion to stay Nixon's sentencing pending the outcome of the Supreme Court's decision in Mathis; and (2) he failed to file an appeal.

"To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him." Andrus v. Texas, ---S. Ct.--- 2020 WL 3146872, at *8 (2020) (per curiam) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)); see Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Ross v. Dist. Att'y of the Cnty. of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012). "To show deficiency, a defendant must show that 'counsel's representation fell below an objective standard of reasonableness.'" Andrus, at *8 (quoting Strickland, 466 U.S. at 688). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." Harrington v. Richter, 562 U.S. 86, 104 (2011). It is not enough to show that counsel's errors had "some conceivable effect on the outcome of the proceeding." Id. (citing Strickland, 466 U.S. at 693). If a court determines that a defendant did not suffer prejudice, it need not determine whether counsel's performance was deficient. Marshall v. Hendricks, 307 F.3d 36, 87 (3d Cir. 2002) (citing Strickland, 466 U.S. at 697). Courts should generally address the prejudice prong first, which the court will do here. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993).

### A.  Counsel's Failure to File a Motion to Stay Sentencing

Nixon was not prejudiced by his counsel's failure to file a motion to stay his sentencing. As discussed above, the Supreme Court's decision in Mathis did not announce a novel legal concept and, under Glass, Mathis has no effect on Nixon's designation as a career offender under

the sentencing guidelines. Because Nixon cannot establish that he was prejudiced by counsel's failure to file a motion to stay, the court need not determine whether counsel's performance was constitutionally deficient. Marshall, 307 F.3d at 87.

### B.  Counsel's Failure to File a Notice of Appeal

Nixon contends that his counsel was ineffective for failing to file a notice of appeal. The government responds that Nixon was not prejudiced by counsel's failure to file an appeal because Nixon waived his right to a direct appeal. The relevant question here, however, is not whether Nixon's waiver is valid or whether Nixon's appeal would succeed on the merits. Nixon is not challenging the validity of the wavier and, as discussed above, under Glass, there is no prejudice from failure to challenge Nixon's designation as a career offender under these circumstances. The determinative question is simply whether Nixon instructed his counsel to file an appeal.

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (U.S. 2000) (citing Rodriquez v. United States, 395 U.S. 327, 89 (1969)). "This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." Id. "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Flores-Ortega, 528 U.S. at 484. "[T]he presumption of prejudice recognized in Flores-Ortega applies regardless of whether the defendant has signed an appeal waiver." Garza v. Idaho, 139 S. Ct. 738, 742 (2019); United States v. Lawbaugh, Crim. No. 1:16-CR-049, 2020 WL 954017,

at *8 (M.D. Pa. Feb. 27, 2020) (granting defendant a renewed appellate deadline after finding that counsel should have inferred that the defendant wanted to appeal his sentence); but see United States v. Pridgen, Crim. No. 17-291, 2019 WL 5537893, at *5-6 (W.D. Pa. Oct. 25, 2019) (denying defendant's § 2255 motion without a hearing because sentence was imposed pursuant to a Rule 11(c)(1)(C) plea agreement and defendant did not allege in any of his filings that he expressly asked or expressed any interest in appealing his sentence). "If the client explicitly instructs counsel to file an appeal, they must do so." Lawbaugh, 2020 WL 954017, at *7 (citing United States v. Persaud, No. 1:15-cr-236, 2017 WL 6405866, at *3 (M.D. Pa. Dec. 15, 2017)). "If the client does not explicitly request the filing of an appeal, however, the court must 'conduct a circumstance specific reasonableness inquiry.'" Id. (quoting Persaud, 2017 WL 6405866, at *3).

In Lawbaugh, the parties contested whether the defendant had explicitly instructed counsel to file an appeal or not. After conducting a circumstance-specific reasonableness inquiry, the court found that counsel should have inferred that the defendant wanted an appeal because (1) the defendant informed counsel that he wanted to appeal if he was sentenced to 15 years more than the statutory minimum; (2) the defendant was sentenced to 15 years more than the minimum; and (3) the defendant's mother contacted defendant's counsel regarding an appeal before the deadline had run. Lawbaugh, 2020 WL 954017, at *8. "[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." Peguero v. United States, 526 U.S. 23, 28, (1999).

As in Prigden, Nixon did not allege in any of his filings that he expressed to his counsel any interest in pursuing an appeal. Prigden, 2019 WL 5537893, at *5-6. The only allegation that Nixon offers to support his claim is that "the record fails to conclusively establish that Nixon did not instruct [his counsel] to file a notice of appeal[.]" (ECF No. 639 at 23.) The court's review of

the record finds no other allegation or evidence that Nixon asked his counsel to file an appeal on his behalf. Unlike the circumstances presented in <u>Lawbaugh</u>, the record here does not indicate that Nixon's counsel should have inferred that his client wanted to appeal his sentence. <u>Lawbaugh</u>, 2020 WL 954017, at *8. Instead, the record shows that Nixon waived his right to file a direct appeal (except in three circumstances not present here) by signing a plea agreement with the government. At the change-of-plea hearing on January 26, 2020, the government reviewed the appellate waiver as stated in the plea agreement as well each of the applicable exceptions. (ECF No. 680 at 4-5.) The court also reviewed the appellate waiver provisions and specific exceptions set forth in the plea agreement, and the legal consequences of Nixon waiving his right to appeal. (<u>Id.</u> at 4-8.) Nixon stated that he understood his appellate rights and that he wished to waive those rights in accordance with the plea agreement. (<u>Id.</u> at 8.) Nixon stated at his change-of-plea hearing that he was satisfied with his counsel's advice and representation. ((ECF No. 679 at 5.)  The term of imprisonment imposed at sentencing reflected a downward variance that was 37 months below the bottom of the range recommended by the sentencing guidelines. (ECF Nos. 541, 551.)

Because nothing in the record suggests that (a) Nixon expressly asked his counsel to file an appeal, (b) his counsel should have inferred that Nixon wanted to appeal his sentence, or (c) there was a basis for an appeal, Nixon did not establish that his counsel's performance was constitutionally deficient. Nixon, therefore, cannot show that his counsel was ineffective for failing to file a notice of appeal.

## VI.    <u>CONCLUSION</u>

Based on the foregoing discussion, Nixon's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED. An appropriate order will follow.

BY ORDER OF THE COURT

July 21, 2020                              /s/ Joy Conti Flowers
                                          Joy Conti Flowers
                                          Senior United States District Judge